**John CHIESA and Nancy Chiesa, Plaintiffs,**

v.

**Dale E. ROWE, M. D., F. Timothy Reineck, M. D., and K Valley Orthopedics, P. C., jointly and severally, Defendants.**

**No. K 79–439.**

United States District Court, W. D. Michigan, S. D.

March 28, 1980.

Frederick B. Bellamy and Daniel Noveck, of Frimet, Bellamy, Gilchrist & Jehle, Southfield, Mich., for plaintiffs.

Thomas G. Parachini of Brown, Colman & DeMent, Kalamazoo, Mich., for defendants.

## OPINION AND ORDER ON MOTION TO DISMISS

ENSLEN, District Judge.

This is a motion by Defendants Dale E. Rowe, M. D., F. Timothy Reineck, M. D., and K Valley Orthopedics, P. C., to dismiss Plaintiff Nancy Chiesa as a party to Count I and to dismiss Count II of the Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

Plaintiff, John Chiesa, was involved in an automobile accident on January 24, 1979 and upon entering the hospital was referred to Defendant doctors for treatment. John Chiesa was at the time of the accident, and subsequent medical care, betrothed to co-Plaintiff, Nancy Chiesa, and they were later married on July 1, 1979.

Plaintiffs brought this action to recover damages for alleged malpractice in failing to promptly and properly care for John Chiesa's midthoracic spinal injury (Count I) and for loss of consortium resulting from injuries caused by the alleged malpractice (Count II).

Defendants contend that Nancy Chiesa has no cause of action in malpractice because no physician-patient relationship existed between her and the Defendant doctors. Defendants further contend that Nancy Chiesa lacks a cause of action for loss of consortium because she was not married to the co-Plaintiff, John Chiesa, at the time of the alleged tortious conduct. In furtherance of these contentions the Defendants filed a Motion to Dismiss and supporting Memorandum on February 25, 1980. Since Plaintiffs have failed to respond to the Motion within ten days, and oral argument has not been requested, the Court proceeds to determine the merits of the Motion, without hearing, pursuant to Local Court Rule 6.

As the basis of the jurisdiction in this suit is diversity of citizenship, the Court looks to state substantive law. Since the alleged tortious conduct and resulting injury occurred in Michigan, this Court is guided by Michigan law on the issues.

### Count I Malpractice

Under the controlling Michigan law a wife does not have a cause of action for malpractice when the maltreatment was performed solely upon her husband because the requisite physician-patient relationship does not exist between the wife and the doctor. The case cited by the Defendants for this proposition, *Rogers v. Horvath, 65*

Mich.App. 644, 237 N.W.2d 595 (1976), while not addressing the specific issue of a spouse's rights where malpractice has occurred, does support the contention that only a "patient" may bring an action for malpractice. There the Michigan Court of Appeals held that a workmen's compensation claimant, who was examined by his employer's physician for the purpose of testifying before a workmen's compensation referee, was not a "patient" and therefore could not maintain an action for malpractice.

This Court has not been able to discover any Michigan cases allowing or disallowing a wife a direct recovery for malpractice incurred by the husband. A wife may, however, bring suit as administratrix if the tort results in her spouse's death or bring suit for loss of consortium. These remedies serve to make the wife as whole as the law is capable of. There seems to be no persuasive need for further exception to the general rule that one person cannot maintain an action for injury to another. This Court is of the opinion that the alternative forms of compensation in conjunction with the restrictive definition of malpractice would lead a Michigan Court confronted with this question to refuse to provide a spouse a cause of action in malpractice for her spouse's injury and therefore finds Defendants Motion for Dismissal should be granted as to Count I.

### Count II Loss of Consortium

Under Michigan law the cause of action for the loss of consortium has only been found where a marital relationship exists. In their Memorandum the Defendants cite cases in which the legally recognizable loss of consortium is defined. In *Montgomery v. Stephan*, 359 Mich. 33, 101 N.W.2d 227 (1960), the first Michigan case to hold that the wife's rights for loss of consortium were equal to that of a husband's, the court assumed that marital status was required. The court defined consortium as "conjugal fellowship", with "conjugal" defined in Webster's New Collegiate Dictionary as "of

or relating to the married state or to married persons and their relations".

No Michigan cases were found that involved an engaged party seeking recovery for loss of consortium. The general rule as discussed in *American Jurisprudence,* however, would bar recovery of a plaintiff who was not married to the injured party at the time of the tort:

At common law a husband has a cause of action against one who wrongfully or negligently injures his wife and thereby causes him expense and loss of consortium. This cause of action is incident to the marriage relationship *and cannot exist without it.* If the wife was injured before her marriage, the husband has no right to recover for the loss of services occasioned thereby, since he lost nothing by this particular disability of the wife; when he married her the deprivation existed and consequently he never possessed or became entitled to that which suffered impairment. 41 *Am.Jur.*2d, Husband and Wife, Sec. 477. (Emphasis by Court).

Although modern courts would be reluctant to embrace such language involving possessory rights or interests in another, especially since the loss of service has been recognized as "an outworn fiction" in actions for loss of consortium (the real interest is understood to be the "undisturbed relation with her consort")[1], the reasoning behind the cases which provide the basis for the rule appears persuasive.

When a fiancee decides to go forward with the marriage after injury and disability strikes her betrothed she must recognize the extent of assistance and comfort that he will be able to provide and will in turn require. In doing so she waives her rights to another level or form of conjugal fellowship which might have been obtained had she married another. In addition policy dictates that there be some limitation to this form of liability. Although plaintiffs were living together and engaged to be married when an injury to the female plaintiff occurred, the Court in *Tong v. Jocson,*

---

1. Prosser, *Law of Torts,* Section 125 Injuries to Members of the Family, pp. 894–5 (1971).

76 Cal.App.3d 603, 142 Cal.Rptr. 726 (1977), denied recovery. There the court approvingly cited other California cases for the proposition that:

> . . . social policy must at some point intervene to delimit liability . . . Not every loss can be made compensable in money damages, and legal causation must terminate somewhere . . . *Rodriguez* [*v. Bethlehem Steel Corp.,* 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669 (1974)], supra, repudiates "an, indefinite extension of liability for loss of consortium to all foreseeable relationships." (*Tong,* id. at 727 citations omitted).

This Court is of the opinion that a Michigan state Court presented with the issue of whether loss of consortium should be extended to a party betrothed to another would find the above reasoning persuasive and would follow the general rule denying such an extension, and accordingly this Court finds the Defendants' Motion for Dismissal as to Count II ought to be granted.

Defendants' Motions for Dismissal of Nancy Chiesa as a party to Count I and to Dismiss Count II are therefore granted.

IT IS SO ORDERED.