Daniel SAWYER and Lynn Jackson Sawyer

v.

Ralph BAILEY.

Supreme Judicial Court of Maine.

April 15, 1980.

Argued Jan. 9, 1980.
Decided April 15, 1980.

Lowry, Platt & Givertz, Thomas P. Downing, Jr., orally, Phyllis G. Givertz, Portland, for plaintiff.

Norman & Hanson, Theodore H. Kirchner, orally, Portland, for defendant.

Before McKUSICK, C. J., WERNICK, GODFREY and GLASSMAN, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

Their wedding date set for September 17, 1977, Daniel Sawyer and Lynn Jackson on the third day of July made it public and announced to the world that they were engaged to marry. On the fourteenth day of July as Sawyer with his fiancee was turning into the driveway of Grace Press in Falmouth, Maine, to pick up their printed wedding invitations, their automobile was involved in an accident with the defendant's vehicle. Lynn Jackson received an injury to her neck and back for which she was treated by a physician up to the time of her marriage to Daniel Sawyer on September 17, 1977 and thereafter. Her back condition deteriorated precipitously in January, 1978, and surgical intervention became necessary and was performed. Her convalescence was long and painful.

On March 1, 1978 the newly-weds sued the defendant, Ralph Bailey, in the Superior Court, Cumberland County, in a two-count complaint, the plaintiff-wife, Lynn Jackson Sawyer, in the first count seeking damages for her personal injuries, while her husband, Daniel Sawyer, in the second count sought to recover damages for the loss of his wife's consortium due to her injuries allegedly caused by the defendant's negligence. On May 24, 1979 the parties filed a stipulation of dismissal of the first count of the complaint, since they had reached a settlement in relation to the wife's cause of action and

judgment to that effect was properly entered. The remaining viability of the second count relating to the husband's alleged loss of his wife's consortium, however, was contested and submitted to the Court for determination on a motion for partial summary judgment. The Superior Court Justice ruled that

"there is no cause of action for loss of consortium on behalf of an engaged party, even though there is a later marriage, and even though there is an engagement at the time of injury,"

and granted the reference motion on July 6, 1979. From the entry of summary judgment respecting Count II of the complaint on July 11, 1979, the plaintiff, Daniel Sawyer, appeals to this Court. We deny the appeal.

The single issue in the instant case may be stated as follows: Does a cause of action for loss of consortium exist in favor of a husband where the injury to the wife occurred before the marriage while the couple was engaged to marry? We answer in the negative.

The authorities are unanimous in limiting the right of consortium to the marital relationship. The right of consortium has been said to grow out of the marriage relationship. *Marri v. Stamford St. R. Co.*, 84 Conn. 9, 78 A. 582, 33 L.R.A., N.S., 1042, Ann.Cas. 1912B 1120 (1911); *Tribble v. Gregory*, Miss., 288 So.2d 13 (1974); *Wagner v. International Harvester Company*, 455 F.Supp. 168 (D.Minn., 4th Div., 1978). Absent the lawful relationship of husband and wife, there can be no recovery for loss of consortium. *Domany v. Otis Elevator Company*, 6th Cir., 369 F.2d 604 (1966), cert. denied, 387 U.S. 942, 87 S.Ct. 2073, 18 L.Ed.2d 1327.

Where the injured person received his or her injury prior to marriage, the other spouse upon marriage has no cause of action for loss of consortium of his or her previously injured marriage partner, even though they were engaged to be married at the time of the injury. *Rademacher v. Torbensen*, 257 App.Div. 91, 13 N.Y.S.2d 124

(1939); *Tong v. Jocson,* 76 Cal.App.3d 603, 142 Cal.Rptr. 726 (1977). The plaintiff cites in support of his contention the case of *Sutherland v. Auch Inter-Borough Transit Co.,* 366 F.Supp. 127 (E.D.Pa.1973). In *Sutherland,* the federal court purported to follow Pennsylvania law. Although the highest court of the Commonwealth has not ruled on the question, lower courts in Pennsylvania, both before and after *Sutherland,* refused to sanction a cause of action for loss of consortium where the injury occurred prior to marriage, even though the couple were engaged at the time. See *Sartori v. Gradison Auto Bus Co., Inc.,* 42 Pa.D. & C.2d 781 (1967) and *Rockwell v. Liston,* 71 Pa.D. & C.2d 756 (1975). For that reason, *Sutherland,* as an authority, would not carry much persuasiveness.

■ Generally speaking, a mere engagement to marry does not entitle the parties to the legal protection afforded to spouses. *Nelson v. Melvin,* 236 Iowa 604, 19 N.W.2d 685 (1945); *Conway v. O'Brien,* 269 Mass. 425, 169 N.E. 491 (1929); *Homan v. Hall,* 102 Neb. 70, 165 N.W. 881 (1917); *Davis v. Condit,* 124 Minn. 365, 144 N.W. 1089 (1914); Prosser, Law of Torts, 4th Ed. 1971, § 124, p. 874. See also *Jowett v. Wallace,* 112 Me. 389, 92 A. 321 (1914).

Furthermore, the authorities agree that the right of consortium tracks the existence of the marital relationship and terminates at its dissolution by death or divorce. *Archie v. Hampton,* 112 N.H. 13, 287 A.2d 622 (1972); *Walden v. Coleman,* 105 Ga.App. 242, 124 S.E.2d 313 (1962); *Burk v. Anderson,* 232 Ind. 77, 109 N.E.2d 407 (1952).

Thus, the law is concerned with the protection of the "relational" interests of married persons and recognizes as an actionable tort any interference, intentional or negligent, with the *continuation* of the relation of husband and wife, such as the right to damages for the loss of consortium of either one of the spouses. See Prosser, Law of Torts, 4th Ed. 1971, § 124, p. 873. But, as stated in *Potter v. Schafter,* 161 Me. 340, at 341, 211 A.2d 891, at 892 (1965), we are aware that as a common law court we have the power to grant a new cause of action

for the redress of rights, or, as requested by the plaintiff in the instant case, to expand the cause of action for the recovery of damages for loss of consortium in a tortious injury case so as to encompass parties who are engaged to marry at the time of the tortious incident and who thereafter do marry.

We would point out that the question is one of first impression in Maine. We recognize that the plaintiff had an inchoate expectation that third persons would use reasonable care in relation to the person of his fiancee so that his prospective marital rights would not be infringed. Although our society regards it of the highest primacy that a remedy be afforded for the redress of wrongs caused by tortious conduct (*Moulton v. Moulton,* Me., 309 A.2d 224 (1973)), nevertheless, we discern countervailing policy factors which persuade us to confine consortium rights to cases where the tortious injury occurred while the parties were married, one to the other.

■ The general rule is that no person has a right of action against a wrongdoer, unless that person is personally injured. The cause of action accrues, generally, when the tort is committed. See *Betts v. Norris,* 21 Me. 314 (1842); *Jedzierowski v. Jordan,* 157 Me. 352, 172 A.2d 636 (1961); *Tantish v. Szendey,* 158 Me. 228, 182 A.2d 660 (1962). Cf. *Williams v. Ford Motor Company,* Me., 342 A.2d 712 (1975). When the alleged antenuptial tort was committed by the defendant against the woman plaintiff, the man plaintiff suffered no injury, because he possessed no marital right at that time, never having assumed any marital obligations. When Daniel Sawyer later took Lynn Jackson as his lawful wedded wife, he took her for better or for worse in her then existing state of health, voluntarily taking unto himself any marital deprivation that might result from his wife's premarital injury. *Rademacher v. Torbensen,* supra; *Booth v. Baltimore & O. R. Co.,* 77 W.Va. 100, 87 S.E. 84 (1915); *Reading v. Pennsylvania R. Co.,* 52 N.J.Law. 264, 19 A. 321 (1890).

As a general rule, at least, a tort to the person of one individual does not make the tortfeasor liable to another individual merely because the injured person was under a contract with that other person, unless the wrong is done with intent to affect the contractual relations. See *Shields v. Booles*, 238 Ky. 673, 38 S.W.2d 677, 679 (1931); *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927); *The Federal No. 2*, 2nd Cir., 21 F.2d 313 (1927). The law, however, allows a cause of action in favor of the other spouse where husband or wife during marriage is injured as a result of the tortious conduct of a third party (consortium); a parent also can recover damages from a tortfeasor for the loss of the services of an unemancipated minor child. The basis for recovery is the tortious interference with the actual recognized family relationship.

With due regard to the old maxim that "for every wrong there is a remedy" (*Dwyer v. State*, 151 Me. 382, 395, 120 A.2d 276, 283 (1956)), we must recognize that it has its limitations. See *Crossman v. Bacon & Robinson Co.*, 119 Me. 105, 108–9, 109 A. 487 (1920). As stated in *Tobin v. Grossman*, 24 N.Y.2d 609, 619, 301 N.Y.S.2d 554, 561, 249 N.E.2d 419, 424:

> "While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. The risks of indirect harm from the loss or injury of loved ones is pervasive and inevitably realized at one time or another. Only a very small part of that risk is brought about by the culpable acts of others. This is the risk of living . . . It is enough that the law establishes liability in favor of those directly or intentionally harmed."

Legal causation must terminate somewhere and in the case of loss of consortium must as a social public policy be limited to the factual status of husband and wife ex-

isting at the time of the occurrence of the tortious conduct. Should liability for loss of consortium be recognized in favor of persons engaged to marry who subsequently to the injurious tortious incident do formally marry, under what reasonable basis, then, should a minor child be deprived of recovery for the loss of consortium of a father or mother? The authorities agree that the benefits of the doctrine do not extend to children. *Borer v. American Airlines, Inc.*, 19 Cal.3d 441, 138 Cal.Rptr. 302, 563 P.2d 858 (1977); *Pleasant v. Washington Sand & Gravel Co.*, D.C.Cir., 262 F.2d 471 (1958); *Meredith v. Scruggs*, 9th Cir., 244 F.2d 604 (1957); *Gibson v. Johnston*, 144 N.E.2d 310 (Ohio App.1956). Also, if the betrothed are to be accorded the cause of action, should not consortium rights be extended on post-accident marriage to the growing number of "unmarried cohabitants" who in the language of *Grishman v. Grishman*, Me., 407 A.2d 9, at p. 12 (1979) live in that "nebulous relationship?"

Since the creation of a legal remedy for the so-called loss of consortium, by persons who are engaged to marry and who do marry subsequently to the injury to one of them or both by reason of the negligent conduct of a tortfeasor, involves on the part of the judiciary the establishment of public policy for the State, the courts should take into consideration what public policy, if any, the Legislature has exemplified in relation to antenuptial contractual rights. We observe that, in connection with marital property rights in divorce or legal separation, the Legislature has limited them to "property acquired by either spouse subsequent to the marriage," except for specific exceptions of no consideration. for our present purposes. 19 M.R.S.A. § 722–A; *Grishman v. Grishman*, supra. This necessarily excludes property acquired by either spouse following their engagement to marry and before the official marriage. More closely related to our concern is the fact that in 1941 our Legislature barred any action or proceeding for the recovery of damages for the breach of a promise to marry. P.L. 1941, c. 104, § 1 (now 14 M.R.S.A. § 854). It would seem anomalous, to say the least, as

a matter of public policy, to allow recovery from a third party tortfeasor to a person potentially injured in future consortium rights and deny recovery against that same person for the breach of the contract to marry.

The foregoing considerations impel a judicial determination against extending the cause of action for loss of conjugal rights beyond the factual existence of the marital relationship and we so decide. See Restatement (Second) Torts § 693(h). Cf. *Waddell v. Briggs*, Me., 381 A.2d 1132 (1978).

The entry will be:

Appeal denied.

Judgment affirmed.

All concurring.