WENDY SOSTOCK *et al.*, Plaintiffs-Appellants, *v.* JOHN REISS *et al.*, Defendants-Appellees.

First District (5th Division)    No. 79-1996

Opinion filed December 24, 1980.

Brown & Shinitzky, Chartered, of Chicago (Edwin J. Shinitzky and Nelson Hembree, of counsel), for appellants.

Crooks & Gilligan, Ltd., and McKenna, Storer, Rowe, White & Farrug, both of Chicago (John W. Gilligan and Robert S. Soderstrom, of counsel), for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff Daniel Sostock and Wendy Sostock (Wendy) filed a two-count complaint against defendants seeking damages for personal injuries sustained by Wendy prior to her marriage. In count II, plaintiff sought to recover for loss of consortium sustained from the date of their subsequent marriage. Defendant John Reiss' motion to dismiss count II was granted. Plaintiff appeals and requests this court to recognize a cause of action for loss of consortium from the date of marriage where at the time of Wendy's accident they were engaged to marry and shortly thereafter were married. Wendy is not a party to this appeal.

In count II of the complaint, plaintiff alleged that on May 13, 1977, Wendy sustained personal injuries in a fall from a horse allegedly caused by defendants' negligence and that on June 5, 1977, he married Wendy, and at all times subsequent thereto was her lawful, wedded husband, and that he lived, consorted and cohabited with his said wife; that following his marriage he has suffered the loss of the services of his wife and has been deprived of her affection, society, companionship and consortium by means of defendants' conduct. Defendant John Reiss made a motion to strike and dismiss the second count because no legal relationship existed between plaintiff and Wendy at the time of the accident and because plaintiff voluntarily assumed the marital relationship. The trial court granted defendant's motion and certified it as a final and appealable order. Plaintiff appeals from the denial of his motion for rehearing.

OPINION

■■ The sole issue presented for review is whether a cause of action for loss of consortium exists in favor of a husband where the injury to his wife occurred shortly before their marriage while they were engaged. It is well settled that under Illinois law a spouse may recover for loss of consortium where his spouse is injured due to the negligent acts of third persons. See *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881.

Plaintiff contends that although Illinois courts have never addressed the instant issue, two Federal district court decisions indicate "a definite willingness * * * to allow recovery for loss of consortium where the couple had evidenced a clear intention to be married and where the accident in question closely preceded the date of the marriage."

Plaintiff relies, almost exclusively, on *Sutherland v. Auch Inter-Borough Transit Co.* (E.D. Pa. 1973), 366 F. Supp. 127, which was a diversity action and purported to follow Pennsylvania law. There the husband was allowed to recover for loss of consortium from the date of marriage which took place 27 days after the wife's injury. The Federal court held that it was not bound by the lower court decision in *Sartori v. Gradison Auto Bus Co.* (C.P. Wash. County 1967), 42 Pa. D. & C. 2d 781,[1] and stated:

"Although the *Sartori* court did not expound on the time interval involved between accident and marriage, we are of the opinion that the Supreme Court of Pennsylvania would make some modification of the holding in that case where, at the time of the accident, plaintiffs were engaged to be married and the wedding date was less than a month away." 366 F. Supp. 127, 134.

*Sartori* held:

"[Where a] woman incurs injuries prior to her marriage, the right to

---

[1] Pennsylvania District and County Reports.

recover for the bills should be considered her property and her cause of action. She should plead and if she proves it, collect it. A subsequent husband should not acquire any right to sue for loss of consortium. He should not be entitled to marry a cause of action." 42 Pa. D. & C. 2d 781, 785.

However, our research of Pennsylvania law indicates that contrary to *Sutherland*, its supreme court is not likely to modify the *Sartori* rule. *Orga v. Pittsburgh Rys. Co.* (1944), 155 Pa. Super. Ct. 82, 38 A.2d 391, is the only intermediate court of review in Pennsylvania to indicate, in dictum, that a husband may claim damages for loss of consortium where his spouse sustained injury prior to marriage. However, the court there refused to decide the issue since it was not raised on the trial level. Two years later this dictum was specifically rejected in *Donough v. Vile* (C. P. Phila. County 1947), 61 Pa. D. & C. 460. There, although the injury to the wife occurred only 10 days prior to the scheduled wedding date (which was delayed one month due to the accident), the court held that where the marital relationship did not exist at the time of the tort, a cause of action cannot be created by marriage subsequent thereto. 61 Pa. D. & C. 460, 462.

In 1958, *Meehan v. City of Erie* (C. P. Erie County 1958), 42 Erie 71, another Pennsylvania court of common pleas, reiterated this principle. Eileen Meehan, while single, was injured on July 31, 1955, and married Robert Plowski sometime prior to the filing of the complaint on January 3, 1957. Although the court dismissed the action because of deficiencies in the complaint, it stated that since Robert married Eileen after the accident he could not in so doing acquire any rights against defendants. It reasoned that it would be absurd to assume that where a woman was seriously injured and permanently crippled in an accident prior to marriage that a man could thereafter marry her and claim to be deprived of his expected rights. 42 Erie 71, 76.

In 1963, another court of common pleas in Pennsylvania held that since the husband had no right whatever to the services of his prospective wife at the time of the accident, he lost no rights for which he could claim compensation from defendants. (*Fontana v. Mellott* (C. P. Fulton Cty. 1963), 4 Adams Cty. L. J. 162, 167.) That court also expressly refused to follow the dictum in *Orga*.

Even after *Sutherland*, Pennsylvania State courts still refused to extend a cause of action for loss of consortium to a prospective spouse. (*Rockwell v. Liston* (C. P. Fayette County 1975), 71 Pa. D. & C. 2d 756.) There the district court, while noting the short time span between the accident and the marriage (approximately one month), reasoned that since an action for consortium was an anachronism, that the supreme court of Pennsylvania would be unwilling to extend the rule where no marriage existed at the time of the injury. 71 Pa. D. & C. 2d 756, 757-58.

Plaintiff cites only one other case to support his position, *Wagner v. International Harvester Co.* (D. Minn. 1978), 455 F. Supp. 168. There the husband was injured nearly a year and a half prior to his marriage and then apparently before he even met his wife. *Wagner*, while following the general rule that a wife who was not married to her husband at the time of his injury has no cause of action for loss of consortium, did state "the general rule may yield to special circumstances in unusual cases." (455 F. Supp. 168, 169.) Although *Sutherland* is then cited to support this statement, there are no guidelines or standards indicating when these special circumstances would arise. At best, this dictum is equivocal especially since *Wagner* was convinced that the rule of *Sartori* would be followed by the Minnesota courts. (455 F. Supp. 168, 169.) Consequently, *Wagner* is not supportive of plaintiff's position.

Numerous other State court decisions have dealt with this issue. As early as 1939, a New York appellate court held that a husband cannot recover damages for loss of his wife's services, even where the wife was injured only two months prior to the marriage. It held that if, at the time of his subsequent marriage, plaintiff's wife was disabled as a result of a previous negligent act, plaintiff took her as his wife in her then existing state of health and thus assumed any deprivation resulting from such disability. *Rademacher v. Torbensen* (1939), 257 App. Div. 91, 13 N.Y.S.2d 124.

In 1964, a Louisiana appellate court held that a motorist was not permitted to recover medical expenses incurred by a guest whom he later married. *Cutrer v. Travelers Indemnity Co.* (La. App. 1964), 170 So. 2d 693.

In 1977, a California appellate court held that no action for loss of consortium could be maintained where plaintiff and the injured party were not married but were engaged and living together at the time of the accident even though the parties were married 16 days later. *Tong v. Jocson* (1977), 76 Cal. App. 3d 603, 142 Cal. Rptr. 726.

In 1980, Maine's supreme court undertook an extensive discussion of the present issue. In *Sawyer v. Bailey* (Me. 1980), 413 A.2d 165, the parties had announced their engagement on July 3 setting their wedding date for September 17, and plaintiff's fiancée was injured on July 14. The court there held that where the injured person received his or her injury prior to marriage, the other spouse upon marriage has no cause of action for loss of consortium even though they were engaged to be married at the time of injury. (413 A.2d 165, 166.) It reasoned that the right of consortium grows out of the marital relationship and that the mere engagement to marry does not entitle the parties to the legal protection afforded spouses. (413 A.2d 165, 166-67.) *Sawyer* questioned the persuasiveness of the *Sutherland* decision since subsequent Pennsylvania lower court decisions

refused to follow its holding. Our research does not disclose a single State court decision supporting plaintiff's position.

Plaintiff also argues that the status of husband and wife was established by their announced engagement and ripened into a cause of action upon the accomplishment of marriage. However, he cites no authority for this proposition nor has research revealed any. Generally speaking, a mere engagement to marry does not entitle the parties to the legal protection afforded to spouses. *Sawyer v. Bailey* (Me. 1980), 413 A.2d 165; Prosser, Law of Torts §124, at 874 (4th ed. 1971); 15 Williston on Contracts §1741, at 68 (3d ed. 1972).

In an analogous situation it was held that a cause of action for alienation of affection did not exist in favor of a fiancée against third persons for causing a breach of a contract to marry. (*Brown v. Glickstein* (1952), 347 Ill. App. 486, 107 N.E.2d 267.) That court reasoned that no legal rights were violated because no such rights existed in an agreement to marry. *Brown*, quoting *Homan v. Hall* (1917), 102 Neb. 70, 73, 165 N.W. 881, 882, recognized that "[t]he State has an interest in the marriage relation, and until the marriage is solemnized no domestic rights exist, and therefore cannot be violated." 347 Ill. App. 486, 488, 107 N.E.2d 267, 268.

■■ ■ The Illinois Marriage and Dissolution of Marriage Act sets forth procedures for the solemnization and registration of marriage. (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) Under our present statutory scheme, common law marriages contracted in this State after June 30, 1905, are invalid. (Ill. Rev. Stat. 1977, ch. 40, par. 214.) Although any person, having gone through a marriage ceremony, and cohabited with another, to whom he is not legally married, in the good faith belief that he was married to that person, is a putative spouse, subsequent knowledge of the fact that he is not legally married terminates his status and prevents acquisition of further rights. (Ill. Rev. Stat. 1977, ch. 40, par. 305; *In re Estate of Schisler* (1980), 81 Ill. App. 3d 280, 281, 401 N.E.2d 301, 303.) Section 305 of the Illinois Marriage and Dissolution of Marriage Act confers upon the putative spouse the rights of a legal spouse but requires that the parties must have "gone through a marriage ceremony" but these rights are limited to the period in which the party had no knowledge of the invalidity of the marriage. (Ill. Ann. Stat., ch. 40, par. 305, Historical and Practice Notes (Smith-Hurd 1977).) Consequently, prior to a marriage ceremony, the status of husband and wife in the instant case did not exist. Upon engagement, plaintiff had no marital rights for the purpose of maintenance, marital property, inheritance, wrongful death, or workmen's compensation. *Cf. Hewitt v. Hewitt* (1979), 77 Ill. 2d 49, 394 N.E.2d 1204.

As recognized in *Shreve v. Faris* (1959), 144 W. Vir. 819, 824, 111 S.E.2d 169, 173:

"Consortium is a right which the law recognized in a husband, arising from the marital union, to have performance by the wife of all those duties and obligations in respect of him which she undertook *when she entered into the marriage relation* \* \* \*."
(Emphasis added.) See also 4 C.J.S. *Husband & Wife* §11 (1944).

It is comprised of not only material services but also elements of companionship, felicity and sexual intercourse, all welded into a conceptualistic unity. (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 427, 170 N.E.2d 881; *Manders v. Pulice* (1968), 102 Ill. App. 2d 468, 242 N.E.2d 617, *aff'd* (1970), 44 Ill. 2d 511, 256 N.E.2d 330.) The foundation of plaintiff's claim for expenses and damages for loss of consortium is that he was the lawful husband at the time of his wife's accident. Without such a lawful relationship, there can be no recovery by plaintiff. *Domany v. Otis Elevator Co.* (6th Cir. 1966), 369 F.2d 604, 609.

■■ Although actions for personal injuries and loss of consortium are legally distinct, they derive from the same operative facts. (*Mitchell v. White Motor Co.* (1974), 58 Ill. 2d 159, 163, 317 N.E.2d 505, 507; 21 Ill. L. & Prac. *Husband & Wife* §208 (1977).) In the present case, plaintiff seeks damages for loss of consortium due to personal injuries sustained by Wendy in a fall from a horse allegedly caused by defendants' negligence. The fundamental requirements of a negligence action are the existence of a duty owed by defendant to plaintiff, breach of such duty, injury to plaintiff, causal connection between breach and injury. (*Galayda v. Penman* (1980), 80 Ill. App. 3d 423, 399 N.E.2d 656; *People v. Morris* (1978), 60 Ill. App. 3d 1003, 377 N.E.2d 210.) The existence of a legal duty is not dependent on the factor of foreseeability alone but includes consideration of public policy and social requirements. *Ortiz v. City of Chicago* (1979), 79 Ill. App. 3d 902, 907, 398 N.E.2d 1007, 1011.

Since plaintiff was not married to Wendy on the day of her injury, no legal relationship existed between them. As a result plaintiff had no right to the consortium of his prospective spouse and therefore lost no rights for which he could claim compensation from defendants. Because plaintiff had no right to the consortium of Wendy on the day of her injury, defendants owe no duty to plaintiff to protect or refrain from interference with his nonexistent rights. It is fundamental that there can be no recovery in tort for negligence unless the defendant has breached a duty owed to plaintiff. *Lyons v. Christ Episcopal Church* (1979), 71 Ill. App. 3d 257, 389 N.E.2d 623; *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80.

■■ Plaintiff voluntarily entered into the marital relationship with knowledge of Wendy's injuries. Although plaintiff seeks to recover damages for a loss accruing after the date of his marriage, none of the defendants is alleged to have breached any duty or committed any negligent act that

interfered with those rights which came into being on that date. Nor has he lost any services which she undertook at the beginning of their marital relationship. The law is concerned with the protection of the "relational" interests of married persons and recognizes as an actionable tort any interference, intentional or negligent, with the continuation of the relation of husband and wife. (*Sawyer v. Bailey* (Me. 1980), 413 A.2d 165; see also Prosser, Law of Torts §124, at 873-74 (4th ed. 1971).) Since plaintiff was not married to Wendy on the day she was injured, there was no "relational" interest to protect and therefore no interruption in the continuation of that relationship.

■■ Finally, plaintiff argues that denial of a right to recover for loss of consortium in the instant case is contrary to the public policy of Illinois which is to foster and protect marriage. (*People v. Walker* (1951), 409 Ill. 413, 418, 100 N.E.2d 621, 624.) He suggests that such a denial would encourage a fiance to refuse to marry his intended spouse. By implication, plaintiff's argument suggests that he would be reluctant to enter into a marital relationship without the prospect of a monetary gain resulting from injury to his fiancée. A decision to marry should be based on mutual love, affection and respect, not on a mercenary motive. A monetary award would in no way cure or alleviate any physical infirmities or compensate for those absent services normally associated with consortium. If an injured fiancée requires special medical services or assistance for a period extending beyond the date of marriage, these expenses would be adequately compensated by a suit instituted by the injured party. The recognition of a cause under the present circumstances would encourage an announced fiance to assume the marital relationship, not in spite of intervening injuries to his fiancée, but rather due to monetary considerations. We do not see how this type of motivation would in any way further the policy of the State to foster and protect the institution of marriage.

For the foregoing reasons we conclude that a cause of action does not extend in favor of a plaintiff where the injury to his wife occurred shortly before their marriage, notwithstanding that the couple was then engaged to be married. Accordingly, the order dismissing count II of the complaint is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.